$\mathcal{J}\mathcal{H}$

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DOUGLAS LEVINE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 06 C 1437 |
| | ) |
| BALLY TOTAL FITNESS HOLDING | ) |
| CORPORATION, PAUL A. TOBACK, | ) |
| JOHN W. DWYER, LEE S. HILLMAN, | ) |
| and ERNST & YOUNG, LLP, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Before the court are defendants' motions to dismiss the complaint. For reasons of judicial economy, at this juncture, the court is addressing only defendants' arguments that plaintiff's claims are time-barred. For the following reasons, the motions of Lee S. Hillman, John W. Dwyer, and Bally Total Fitness Holding Corporation and Paul A. Toback are granted in part and denied in part, and the motion of Ernst & Young, LLP is granted.

## BACKGROUND

This case is part of a group of consolidated cases referred to as In re Bally Total Fitness Securities Litigation.[1]  Plaintiffs

---

[1] The lead case is Petkun v. Bally, 04 C 3530, which was filed on May 20, 2004. We previously granted the parties' motions for consolidation of the cases for all purposes and directed that the consolidated cases be referred to as "In re Bally [Total] Fitness Securities Litigation." (Minute Order of Sept. 8, 2004.) We also appointed Cosmos Investment Company, LLC ("Cosmos") as lead plaintiff (Memorandum Opinion of March 15, 2005), and appointed lead and local counsel (Minute Order of May 23, 2005). On January 3, 2006, Cosmos filed a

have filed several related securities fraud putative class actions against Bally Total Fitness Holding Corporation ("Bally"); three of its former officers and directors, Lee S. Hillman, John W. Dwyer, and Paul A. Toback; and Bally's former auditor, Ernst & Young, LLP. It is alleged that defendants violated federal securities laws by publicly disseminating false and misleading corporate reports, financial statements, and press releases.

The complaint alleges the following facts, which are taken as true for purposes of the instant motions.

Defendant Bally is a corporation that operates many fitness centers throughout North America. Bally's securities are publicly traded on the New York Stock Exchange. Plaintiff Douglas Levine acquired 2.6 million shares of Bally common stock in connection with Bally's acquisition of Crunch Fitness International, Inc. ("Crunch") pursuant to an October 31, 2001 Agreement and Plan of Merger (the "Crunch Acquisition Agreement"). Plaintiff was a stockholder of Crunch at the time of the acquisition. He alleges that the shares of Bally stock sold to him in connection with the acquisition were valued at an artificially inflated price due to defendants' wrongful conduct.

---

consolidated class action complaint on behalf of a class consisting of those who purchased or acquired Bally securities during the period of August 3, 1999 through and including April 28, 2004.

The complaint in the instant case was filed on March 15, 2006; the case was initially assigned to Judge Der-Yeghiayan. It was reassigned to us and consolidated with the others on April 18, 2006.

Prior to and at the time of the acquisition, defendant Dwyer was Bally's Chief Financial Officer and Executive Vice President; defendant Toback was Bally's Chief Operating Officer; and defendant Hillman was Chief Executive Officer ("CEO"), President, and Chairman of Bally's Board of Directors (the "Board"). Hillman retired in December 2002. Dwyer resigned from his positions on April 28, 2004. Toback subsequently became President and CEO. (In August 2006, Toback resigned from his positions.) We will refer to Hillman, Dwyer, and Toback collectively, where appropriate, as the "Individual Defendants," and to Bally and the Individual Defendants, where appropriate, as the "Bally Defendants." The accounting firm Ernst & Young, LLP ("E & Y") served as Bally's outside auditor prior to and at the time of the acquisition and thereafter, until it resigned the engagement on March 31, 2004.

The thrust of the complaint is that prior to the Crunch acquisition, defendants caused Bally to issue numerous press releases and to file reports and statements with the Securities and Exchange Commission (the "SEC") that touted the company's financial performance, when in truth Bally was prematurely recognizing revenue and thus materially inflating its reported revenues and income, in violation of Generally Accepted Accounting Principles (GAAP) and Bally's own revenue-recognition policy.

From early 2000 through late 2001, Bally issued press releases and filed 8-K, 10-K and 10-Q forms with the SEC stating its

financial results for various time periods. Some of the SEC
filings contained certifications by the Individual Defendants
pursuant to the Sarbanes-Oxley Act of 2002. In the Sarbanes-Oxley
certifications, the Individual Defendants attested that they had
reviewed the contents of the particular report to confirm that it
did not contain any untrue statement of material fact or omit a
material fact necessary to make the statements not misleading.

Plaintiff alleges that Bally's financial statements were
materially false and misleading because, contrary to defendants'
representations, they had not been prepared in conformity with
Generally Accepted Accounting Principles (GAAP). Bally is alleged
to have violated GAAP in accounting for the following: membership
revenue; membership acquisition expenses; recoveries of unpaid
dues; acquired payment obligations; prepaid personal training
services; multiple-element arrangements; self-insurance liabilities
and insurance expense; costs incurred to develop internal-use
computer software; escheatment obligations; advertising expense;
maintenance expense; start-up ("presale") costs; inventory;
accruals; foreign exchange gains and losses; leases; sales of
future receivables; the valuation of goodwill and separately
identifiable intangible assets apart from goodwill; the
amortization of goodwill; and fixed asset impairment. (Complaint
¶¶ 74-110, 113-121.)

Plaintiff also alleges that E & Y, in its capacity as Bally's outside auditor during most of the relevant time period, played a role in the fraud. E & Y issued unqualified audit opinions on Bally's financial statements for the years 1999-2001. (Only the statements for the years 1999 and 2000, however, were issued before plaintiff acquired his Bally stock.) Plaintiff maintains that E & Y diverged from Generally Accepted Auditing Standards (GAAS) when auditing Bally in that it either identified and ignored flagrant multiple violations of GAAP or recklessly failed to identify these violations.

The complaint alleges that "defendants' fraudulent misrepresentations beg[a]n to unravel" on March 11, 2004, when Bally issued a press release indicating that it was changing its accounting practices and that the change would result in non-cash charges of $675 million. (Complaint ¶¶ 50-51.) On March 30, 2004 and April 2, 2004, Bally filed its 2003 annual report with the SEC on Forms 10-K and 10-K/A, stating that its previous accounting methodology had resulted in errors in calculating deferred revenue related to prepaid dues and that it was restating several prior periods. Plaintiff alleges that the March 11 press release and the March 30 and April 2 filings were materially false and misleading "in that they covered up the true accounting manipulations" that occurred. (Id. ¶ 55.)

It is further alleged that "[t]he truth concerning [Bally's] accounting improprieties was not known to the market and Plaintiff until April 28, 2004." (Id. ¶ 56.) On that day, Bally issued a press release announcing that its CFO, Dwyer, had resigned "pursuant to the terms of a separation agreement" and that "[s]eparately, the Company announced" that the SEC had commenced an investigation connected to Bally's recent restatement regarding the timing of recognition of prepaid dues. (Id. ¶ 56 (quoting from press release).) Plaintiff asserts that in response to this announcement, the price of Bally common stock fell from $5.40 per share on April 28 to $4.50 per share on April 29, a 16.6% drop. In the period of ninety trading days following the disclosure, the stock reached a mean trading price of $4.56 per share.

On November 15, 2004, Bally announced that its Audit Committee had concluded, based on its internal investigation, that Bally's financial statements for the years 2000 through 2003 and for the first quarter of 2004 could no longer be relied upon and should be restated. Bally also announced that it would be unable to issue any financial statements for the remainder of 2004 or for 2005 until it had completed the restatements, which were expected to be issued in July 2005 (but were not actually issued until November 2005).

On February 8, 2005, Bally announced the Audit Committee's findings that multiple accounting errors had occurred. Bally also

announced that it was suspending the severance pay of Hillman and Dwyer (the former CEO and CFO, respectively), who, in the Audit Committee's view, were responsible "for multiple accounting errors and creating a culture within the accounting and finance groups that encouraged aggressive accounting." (Id. ¶ 60.) Bally also stated that it had identified deficiencies in its internal controls over financial reporting. On February 16, 2005, Bally announced that it had received a request for information from the United States Attorney for the District of Columbia in connection with a criminal investigation.

On November 30, 2005, Bally filed a restatement that comprehensively restated its financial results for 2000, 2001, 2002, and 2003, and first reported results for 2004 and the first three quarters of 2005 (the "Restatement").[2] The adjustments in the Restatement resulted in a $96.4 million increase in previously-reported net loss for the year 2002 and a $540 million decrease in net loss for the year 2003. The decrease in 2003 reported net loss includes the reversal of the cumulative effect of the change in accounting previously reported in 2003 of $583 million. Bally also increased the January 1, 2002 opening accumulated stockholders' deficit by $1.7 billion to recognize the effects of corrections in financial statements prior to 2002.

---

[2] In connection with the review and restatement, Bally retained KPMG as auditor.

Plaintiff filed this action on March 15, 2006. The complaint contains five counts. In Count I, plaintiff alleges that all defendants violated § 10(b) of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. 240.10b-5. Count II is a "control person" claim in which plaintiff alleges that the Individual Defendants violated § 20(a) of the Act, 15 U.S.C. § 78t(a). In Count III, plaintiff alleges that the Bally Defendants violated § 18 of the Act, 15 U.S.C. § 78r. Counts IV and V are for, respectively, common-law fraud and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, and are asserted against all defendants. Plaintiff seeks compensatory damages, punitive damages on the common-law fraud claim, attorney's fees, costs, and expenses.

Four separate motions to dismiss the complaint have been filed by (1) Bally and Toback; (2) Hillman; (3) Dwyer; and (4) E & Y. Those motions are now fully briefed.

Defendants contend that plaintiff's claims are time-barred. Defendants also argue that plaintiff's claims fail for the same reasons set forth in defendants' motions to dismiss the consolidated class action complaint. We granted those motions for failure to adequately allege scienter. After we issued our memorandum opinion dismissing the consolidated class action complaint, plaintiff moved to amend his complaint to supplement his scienter allegations. At a hearing on plaintiff's motion to amend,

we determined that an amendment could potentially cure the scienter problem, but would not cure any limitations problems. Accordingly, we instructed the parties to brief only the arguments that plaintiff's claims are time-barred, and indicated that were we to hold that any of the federal claims are not time-barred, we would vacate our earlier order denying plaintiff leave to amend his complaint.

We will first address the motions of the Bally Defendants and then address the motion of E & Y.

## DISCUSSION

### A.    The Motions of the Bally Defendants

The Bally Defendants contend that (1) plaintiff's § 10(b) and § 20(a) claims in Counts I and II are barred by the applicable statute of limitations; (2) plaintiff's § 18 claim is barred by the applicable statute of limitations; and (3) all of plaintiff's claims are barred by the limitations provision contained in the Crunch Acquisition Agreement.

#### 1.    Section 10(b) and 20(a) Claims

Section 10(b) of the Securities Exchange Act makes it unlawful for a person "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). Among those rules is Rule 10b-5, which "prohibits the making of any untrue statement

of material fact or the omission of a material fact that would render statements made misleading in connection with the purchase or sale of any security." In re HealthCare Compare Corp. Sec. Litig., 75 F.3d 276, 280 (7th Cir. 1996). Section 20(a) of the Act, the "control person" provision, "creates vicarious liability for a person who actually or potentially controlled the primary violator's acts." Foss v. Bear, Stearns & Co., 394 F.3d 540, 543 (7th Cir. 2005).

Under the Sarbanes-Oxley Act, plaintiffs must bring § 10(b) and 20(a) claims--"private right[s] of action that involve[] a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws"--by no later than "the earlier of 2 years after the discovery of the facts constituting the violation or 5 years after such violation." 28 U.S.C. § 1658(b). "Discovery" of the facts occurs when a potential plaintiff has inquiry notice or actual notice of a violation. See Tregenza v. Great Am. Communications Co., 12 F.3d 717 (7th Cir. 1993). Inquiry notice is "the term used for knowledge of facts that would lead a reasonable person to begin investigating the possibility that his legal rights had been infringed." LaSalle v. Medco Research, Inc., 54 F.3d 443, 446 (7th Cir. 1995). This "reasonable person" is viewed as an investor of ordinary intelligence. See Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P., 435 F.3d 396, 400 (3d Cir.

2006); In re Enterprise Mortgage Acceptance Co., LLC, Sec. Litig.,
391 F.3d 401, 411 (2d Cir. 2004).

"The statute of limitations is an affirmative defense, and a
plaintiff is not required to negate an affirmative defense in his
complaint. Of course if he pleads facts that show that his suit is
time-barred or otherwise without merit, he has pleaded himself out
of court." Tregenza, 12 F.3d at 718 (citation omitted).
Defendants argue that plaintiff has pleaded facts in his complaint
that show that his §§ 10(b) and 20(a) claims are time-barred--in
particular, that Bally issued a press release on March 11, 2004
stating in part:

Importantly, effective with the 2003 period, the Company
has elected to change from its prior method of estimation
based deferral accounting to a preferable, modified cash
basis of accounting for its membership revenues. Under
the modified cash basis of accounting, revenue is
recognized upon the later of when collected or earned and
costs associated with the sale of memberships are no
longer deferred but are recognized when incurred. This
change, which is an extension of the guidance in EITF00-
21 Revenue Arrangements with Multiple Deliverables
pertaining to revenues from products and services
embedded in membership contracts, is fully supported by
the Company's independent auditors. The Company's
independent auditors will be providing the Company with
a preferability letter supporting the changes. In
related actions, the Company also reduced the balance
sheet carrying value of its deferred tax assets and
corrected an error in the recognition of prepaid dues.
The accounting change and these actions resulted in total
non-cash charges of $675 million.
. . .
The accounting change and these actions results in total
non-cash charges of $675 million consisting of:
. . .
$43 million as of December 31, 2002 resulting from the
correction of an error related to the prior calculation

of prepaid dues. This change is reflected as a restatement of prior periods and represents less than 2% of the reported revenues during each annual restatement period.

(Complaint ¶¶ 51-52.) In defendants' view, this allegation demonstrates that plaintiff had knowledge of facts that would lead a reasonable person to begin investigating the possibility that his legal rights had been infringed, and because plaintiff filed suit later than March 11, 2006 (two years after he had inquiry notice), his claims are time-barred.

We disagree. The question of whether plaintiff had sufficient facts to place him on inquiry notice of a securities fraud claim or claims is a fact question normally inappropriate for resolution on a motion to dismiss. Kauthar SDN BHD v. Sternberg, 149 F.3d 659, 669 (7th Cir. 1998). The exception to this rule is where the facts pled in the complaint indicate without a doubt that plaintiff's suit is time-barred, see id. at 670, but this is not such a case. For inquiry notice to arise, "more than 'merely suspicious circumstances' must exist; instead, the plaintiff must learn of a circumstance that places him 'in possession of, or with ready access to, the essential facts that he needs in order to be able to sue.'" Id. (quoting Fujisawa Pharm. Co. v. Kapoor, 115 F.3d 1332, 1337 (7th Cir. 1997)). "The facts constituting such notice must be sufficiently probative of fraud--sufficiently advanced beyond the stage of a mere suspicion, sufficiently confirmed or substantiated--not only to incite the victim to investigate but also to enable

him to tie up any loose ends and complete the investigation in time
to file a timely suit." Fujisawa, 115 F.3d at 1335.

We cannot say that the March 11 press release constituted even
the "suspicious circumstances" element of inquiry notice that would
trigger a duty to investigate. Defendants have not cited one case
in which a single restatement of results was sufficient to provide
inquiry notice. Rather, the cases cited by defendants involved
more extensive warning signs--for example, widespread media
coverage of accounting problems coupled with a sharp drop in price.
Plaintiff has pled facts concerning a single press release by Bally
itself that only obliquely informed the public of an accounting
error and related charge. These allegations do not establish as a
matter of law that plaintiff was on inquiry notice of his claims on
March 11, 2004. Accordingly, the Bally Defendants' motions to
dismiss will be denied as to Counts I and II.[3]

## 2. Section 18 Claim

Section 18 of the Securities Exchange Act creates a private
right of action for damages resulting from the purchase or sale of
a security in reliance upon a false or misleading statement in a
report or document required to be filed under the Act. See 15
U.S.C. § 78r(a). In Count III of the complaint, plaintiff alleges
that he relied on misstatements that the Bally Defendants made in

---

[3] Because of this ruling, we need not address plaintiff's argument that
the doctrine of tolling applies to these claims (the argument would be rejected
in any event for the reasons stated infra).

Bally's Form 10-K disclosures for fiscal years 1999, 2000, and 2001. (Complaint ¶ 159.)

The first question is which statute of limitations applies to this claim. Section 18 itself states: "No action shall be maintained to enforce any liability created under this section unless brought within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued." 15 U.S.C. § 78r(c). Plaintiff contends, though, that the Sarbanes-Oxley Act increased the time periods to two years and five years, respectively. (As noted supra, under the Sarbanes-Oxley Act, plaintiffs must bring "private right[s] of action that involve[] a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws" by no later than "the earlier of 2 years after the discovery of the facts constituting the violation or 5 years after such violation." 28 U.S.C. § 1658(b).)

The authorities are divided. Compare, e.g., In re Hollinger Int'l, Inc. Sec. Litig., No. 04 C 834, 2006 WL 1806382, at *15 (N.D. Ill. June 28, 2006) (Coar, J.) (rejecting the argument that Sarbanes-Oxley extends the limitations period for § 18 treatments) with Shriners Hosps. for Children v. Qwest Communications Int'l Inc., No. 04-CV-0781-REB-CBS, 2005 WL 2350569, at *3 (D. Colo. Sept. 23, 2005) (determining that § 18 claims fall within the parameters of Sarbanes-Oxley). We find instructive one of the

cases cited by defendants in support of their argument, In re Alstom SA Securities Litigation, 406 F. Supp. 2d 402, 419-21 (S.D.N.Y. 2005). In its thoughtful discussion, the court in Alstom concluded that Sarbanes-Oxley does not apply to § 18 claims for two reasons: (1) § 18 does not require proof of fraudulent intent; and (2) nothing in the statutory framework or legislative history of Sarbanes-Oxley shows a clear intent to revise the express limitations period set forth in § 18 itself. 406 F. Supp. 2d at 420. We adopt the analysis of Alstrom and hold that the Sarbanes-Oxley Act did not extend the one-year/three-year periods set forth in 15 U.S.C. § 78r(c).

The second question is whether plaintiff has pled himself out of court by alleging facts showing that he did not file this action "within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued." 15 U.S.C. § 78r(c). As with the §§ 10(b) and 20(a) claims, defendants assert that plaintiff had inquiry notice of his § 18 claim on March 11, 2005 and that because he did not file this action until March 15, 2006, he is barred by the one-year statute of limitations. We reject this argument for the same reasons we rejected it with respect to the §§ 10(b) and 20(a) claims. Defendants fare better with the three-year limitations period.[4]

---

[4] Defendants refer to this as a three-year "statute of repose," but it is a statute of limitations because it relates to the accrual of plaintiff's cause of action, see our discussion infra regarding the difference between a

Plaintiff's cause of action under § 18 accrues at the time of the stock purchase. See Jacobson v. Peat, Marwick, Mitchell & Co., 445 F. Supp. 518, 527 (S.D.N.Y. 1977). The stock purchase occurred on October 31, 2001, so the three-year limitations period expired on October 31, 2004. Because plaintiff did not file this action until March 15, 2006, the statute of limitations bars his § 18 claim.

Plaintiff maintains that the filing of the class action complaint in the lead case in May 2004 tolled the running of the statute under the class action tolling doctrine announced in American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974). The American Pipe tolling doctrine "works to suspend the limitations clock for putative class members upon the filing of a class action complaint, preserving for each that portion of the limitations period that remained at the time the class action was filed. After a statute has been tolled, the limitations clock then resumes ticking again only after the court makes a class certification decision and the class member 'opts out' of the class." In re Brand Name Prescription Drugs Antitrust Litig., No. 94 C 897, 1998 WL 474146, at *7 (N.D. Ill. Aug. 6, 1998) (Kocoras, J.).

Plaintiffs who commence their own individual actions prior to a class certification determination in the putative class action, however, cannot benefit from the tolling doctrine. See, e.g., id. at *8 (refusing to apply the doctrine where plaintiffs "made a

---

statute of limitations and a statute of repose.

conscious decision early on to pursue their claims on an entirely separate, though essentially parallel, track from that of the Class case. These Plaintiffs filed their own lawsuits and disavowed class status. . . . [I]t would be inequitable to now allow the Individual Plaintiffs to reap the benefits of a doctrine which is designed for a group--the Class and its putative members--which they have disavowed being a part of from the beginning. In fact, class action tolling has been denied in such situations where a plaintiff 'wants his cake and to eat it, too.'"); Calvello v. Electronic Data Sys., No. 00CV800, 2004 WL 941809, at *4 (W.D.N.Y. Apr. 15, 2004) (collecting cases). Here, plaintiff has chosen to pursue separate litigation prior to a determination on class certification; therefore, the American Pipe tolling rule is not available to him.[5] We are not persuaded by plaintiff's unsupported argument that we should apply the tolling doctrine because no motion for class certification has yet been filed in the class action.

Plaintiff's § 18 claim in Count III of the complaint will be dismissed with prejudice as barred by the statute of limitations.

## 3. The Crunch Acquisition Agreement

Defendants contend that all of plaintiff's claims must be dismissed because they are barred by the terms of the Crunch

---

[5]/ Our conclusion that plaintiff cannot rely on the tolling doctrine applies equally to the claims against E & Y.

Acquisition Agreement pursuant to which plaintiff acquired his

Bally stock.   The portions of the Agreement on which defendants

rely are as follows:

ARTICLE IX
INDEMNIFICATION

. . .
9.03 Survival.   All representations and warranties
contained in or made pursuant to this Agreement, and the
rights of the parties to seek indemnification with
respect thereto, shall survive the Closing Date until the
date on which the final audit opinion covering Bally's
consolidated financial statements for the fiscal year
ending December 31, 2002 is released and delivered to
Bally, but in no event later than March 31, 2003.

. . .
ARTICLE XII
MISCELLANEOUS

. . .
12.06 Entire Agreement.   This Agreement (together with
the certificates, agreements, schedules, instruments and
other    documents    referred    to    herein    and    the
Confidentiality   Agreement)   constitutes   the   entire
agreement between the parties with respect to the subject
matter hereof and thereof and supersedes all prior
agreements, both written and oral, with respect to such
subject matter.

(Crunch Acquisition Agreement, Ex. 2 to Decl. of Michael J. Faris

in Support of Mot. to Dismiss of Bally and Toback, at 60-62, 71.)

In  defendants'  view,  § 9.03  sets  forth  a  three-year

"contractual limitations period" for any claims for breach of

representations and warranties contained in the Agreement, which

expired before plaintiff filed suit. We reject this argument. For

one thing, plaintiff is not suing for breach of the Agreement. He

is suing for securities fraud as well as common-law and statutory

fraud.   In any event, it is clear from the context of § 9.03 and

its inclusion in the article concerning indemnification that it refers to a period during which claims for indemnification must be asserted, but not other types of claims. Plaintiff does not seek indemnification; thus, § 9.03 is inapplicable.

Section § 12.06, an integration clause, is also irrelevant to plaintiff's claims. The provision does not address prior representations at all; it simply states that the Agreement is no more than what it says and that there are no prior agreements between the parties. Plaintiff does not seek to recover on any prior agreement. The integration clause does not bar plaintiff's claims.

## B.   The Motion of E & Y

E & Y contends that plaintiff's § 10(b) claim (the only federal claim brought against E & Y) as well as plaintiff's state-law claims are barred by the applicable statutes of repose.

### 1.   Section 10(b) Claim

As stated supra, plaintiffs must bring § 10(b) claims by no later than "the earlier of 2 years after the discovery of the facts constituting the violation or 5 years after such violation."  28 U.S.C. § 1658(b).  E & Y argues that the five-year statute of repose bars plaintiff's claim because its 1999 and 2000 audit opinions had both been issued by February 13, 2001, and plaintiff did not file suit until after the statute of repose expired on

February 13, 2006.[6]  Plaintiff responds that he did not receive the February 2001 audit opinion until it was included in the documents reviewed by him in connection with his entering into the Crunch Acquisition Agreement in October 2001.  In plaintiff's view, the statute of repose begins to run from the stock purchase, not from the issuance of the last audit opinion.

The crucial issue is how to interpret the term "violation" as it is used in the Sarbanes-Oxley statute of repose.  Section 10(b) makes it unlawful to "use or employ" misrepresentations "in connection with the purchase or sale of any security."  For purposes of triggering the statute of repose, does the "violation" occur when the alleged misrepresentation is made, or when the stock purchase occurs?  The weight of authority in this district is that it occurs when the alleged misrepresentation is made.  See Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc., No. 02 C 5893, 2006 WL 560589, at *2 (N.D. Ill. Feb. 28, 2006) (Guzman, J.); Waldock v. M.J. Select Global, Ltd., No. 03 C 5293, 2004 WL 2278549, at *4 (N.D. Ill. Oct. 7, 2004) (St. Eve, J.); Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp., 192 F. Supp. 2d 852, 864 (N.D. Ill. 2002) (Bucklo, J.) (citing two previous decisions).

---

[6]  Although plaintiff alleges that the 2001 audit opinion also contained misrepresentations, that opinion was not issued until February 2002--after plaintiff had already acquired Bally stock.  Plaintiff does not contend in his response brief that the 2001 audit opinion should be considered in the statute of repose analysis.

This interpretation makes sense in light of the distinction between a statute of limitations and a statute of repose. Statutes of repose are measured from the time a defendant took a particular action, not from the accrual of a claim based on that action. See Beard v. J.I. Case Co., 823 F.2d 1095, 1097 n.1 (7th Cir. 1987). "A statute of repose . . . limits the time within which an action may be brought and is not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered. Unlike an ordinary statute of limitations which begins running upon accrual of the claim, the period contained in a statute of repose begins when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted." 54 C.J.S. Limitations of Actions § 5 (2005). Our colleague Judge Bucklo explained in Wafra how these principles apply to the concept of a § 10(b) "violation":

> [I]t appears that a "violation" under Rule 10b-5 is distinct from the concept of a "cause of action" under that rule. A defendant who makes a knowingly false representation with the purpose of inducing a sale of securities violates Rule 10b-5 even if no purchaser is taken in by the lies and no purchase has actually occurred. That the cause of action has not accrued at that point is beside the point, because the defendant has committed a fraudulent act. This distinction is particularly clear where, as here, the defendant accused of misrepresentation is not the seller; the last act committed by [the accountant] with regard to the fraudulent audit was its alleged misrepresentations.

192 F. Supp. 2d at 864 (citation omitted). We follow the reasoning of Judge Bucklo in Wafra and the weight of authority in this

district and hold that the "violation" triggering the statute of repose for a § 10(b) claim is the defendant's act of publishing the allegedly false statements in the audit opinions and not the plaintiff's purchase of securities.

Plaintiff asserts that we should apply the "continuing violation doctrine," which the Seventh Circuit has recognized in civil rights, employment discrimination, and copyright actions. In general terms, the doctrine allows certain of these types of claims to be premised on otherwise time-barred acts that can be linked to conduct falling within the limitations period; the rationale is that such claims are based on a continuing wrong constituting a pattern or practice and not on discrete acts. See generally Lucas v. Chicago Transit Auth., 367 F.3d 714, 724 (7th Cir. 2004). The Seventh Circuit has never extended the doctrine to securities fraud actions, nor, as far as we can tell, have any other higher courts. Plaintiff urges us to follow a single decision from this district, SEC v. Ogle, No. 99 C 609, 2000 WL 45260, at *4-5 (N.D. Ill. Jan. 11, 2000), in which the court applied the continuing violation doctrine to extend the five-year statute of limitations on the SEC's claim for civil penalties arising from the defendants' alleged market manipulation. Ogle is inapposite because it dealt with a statute of limitations, not a statute of repose. Even if Ogle had dealt with a statute of repose, however, we would decline to follow it because the continuing violation doctrine has no

applicability where the complained-of conduct consists of discrete acts. See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002). Plaintiff alleges that E & Y made misrepresentations in audit reports, which are separately identifiable discrete acts. There is no basis for applying the continuing violation doctrine.

Because the § 10(b) statute of repose was triggered by the issuance of E & Y's audit opinion on February 13, 2001 (the last alleged misrepresentation by E & Y that plaintiff could have relied upon in purchasing Bally stock), and plaintiff filed suit more than five years after that date, his claim against E & Y is barred. Count I will be dismissed with prejudice as against E & Y.

## 2. **State-Law Claims**

We have disposed of the only federal claim against E & Y. Ordinarily, we should relinquish jurisdiction of pendent state-law claims when the federal claims are dismissed before trial, but there are some cases in which we should exercise supplemental jurisdiction in the interest of judicial economy to decide the state-law claims on the merits. See Rothman v. Emory Univ., 123 F.3d 446, 454 (7th Cir. 1997). This is one of those cases. E & Y argues that the claims are barred by the Illinois Public Accounting Act, 735 ILCS 5/13-214.2, which contains a five-year statute of repose for "[a]ctions based upon tort, contract or otherwise against any person, partnership or corporation registered pursuant to the Illinois Public Accounting Act." The trigger for the

statute of repose is the "act or omission alleged in such action to have been the cause of injury to the person bringing such action against a public accountant." 735 ILCS 5/13-214.2(b). The Illinois Accounting Act has been interpreted broadly to apply not just to common-law tort claims, but also to statutory claims such as those brought pursuant to the Illinois Consumer Fraud Act. See Terrell v. Childers, 920 F. Supp. 854, 862 (N.D. Ill. 1996).

E & Y was and is registered under the Illinois Accounting Act.[7] The repose period--five years--is identical to that of a § 10(b) claim. Our analysis is the same for the state-law claims as it was for the § 10(b) claim. Plaintiff filed suit more than five years after E & Y published the alleged misrepresentations (the "act or omission alleged . . . to have been the cause of injury," 735 ILCS 5/13-214.2(b)). Accordingly, plaintiff's state-law fraud claims in Counts IV and V of the complaint will be dismissed as barred by the statute of repose.

## CONCLUSION

The pending motions to dismiss the complaint have been narrowed to defendants' arguments that plaintiff's claims are time-barred. The following motions are granted in part and denied in part: (1) the motion of Lee S. Hillman; (2) the motion of John W.

---

[7] In resolving a motion to dismiss, we are entitled to take judicial notice of such matters in the public record without converting the motion into a motion for summary judgment. Anderson v. Simon, 217 F.3d 472, 474-75 (7th Cir. 2000).

Dwyer; and (3) the motion of Bally Total Fitness Holding Corporation and Paul A. Toback.   The motions are denied as to Counts I, II, IV, and V of the complaint, but granted as to Count III of the complaint.   Count III (which is asserted against the Bally Defendants only) is dismissed with prejudice.

The motion of Ernst & Young, LLP is granted, and Counts I, IV, and V are dismissed with prejudice as against Ernst & Young, LLP. This disposition terminates the case as to Ernst & Young.

Our minute order of July 19, 2006 is vacated to the extent that we denied plaintiff's motion to amend the complaint. Plaintiff's motion to amend the complaint to supplement his scienter allegations is granted, and plaintiff may file an amended complaint by October 27, 2006.

DATE:          September 29, 2006

ENTER:

John F. Grady, United States District Judge